CLAYEO C. ARNOLD
A Professional Corporation
Clayeo C. Arnold SBN 65070
Kirk J. Wolden, SBN 138902
608 University Avenue
Sacramento, CA  95825
Telephone: (916) 924-3100
Fax:  (916) 924-1829

Attorneys for the Class

DOWNEY BRAND LLP
WILLIAM R. WARNE (Bar No. 141280)
MICHAEL J. THOMAS (Bar No. 172326)
MEGHAN M. BAKER (Bar No. 243765)
555 Capitol Mall, Tenth Floor
Sacramento, CA  95814-4686
Telephone:      (916) 444-1000
Facsimile:      (916) 444-2100
bwarne@downeybrand.com
mthomas@downeybrand.com
mbaker@downeybrand.com

Attorneys for Defendants Superior Fireplace
Company, Lennox Hearth Products Inc. and Lennox
International Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| KIRK KEILHOLTZ and KOLLEEN KEILHOLTZ for themselves and on behalf of those similarly situated, | Case No. CV 08-00836 SI |
| Plaintiffs, | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| SUPERIOR FIREPLACE COMPANY; LENNOX HEARTH PRODUCTS, INC.; LENNOX INTERNATIONAL, INC. and DOES 1 through 25, Inclusive, | |
| Defendants. | |

936777.4

1

Plaintiffs and Defendants Lennox Hearth Products Inc. and Lennox International Inc. by and through their respective counsel, submit the following Initial Joint Case Management Statement in anticipation of the initial Case Management Conference:

## I.    JURISDICTION AND SERVICE

### A.    Plaintiffs

Subject matter jurisdiction exists in that this action falls within the parameters of CAFA. Specifically, minimum diversity exists as between plaintiffs Kirk and Kolleen Keilholtz on the one hand and at least defendant Lennox International, Inc. Further, the aggregate amount in controversy exceeds five million dollars (see infra, at Section 11).

Venue is proper in the Northern District of California in that a substantial portion of events and omissions on which the claim is based occurred in this Northern District.  Specifically, named plaintiffs' home which they purchased new and unto which their allegedly defective fireplace was delivered and installed is located at 31 Branding Iron Court, Oakleigh, in the County of Contra Costa, State of California.  28 USCA 1391(a)(2)

Plaintiffs are not aware of any issues pertaining to personal jurisdiction given all defendants including Lennox International have previously and within the last year appeared generally including answers to complaints in related state court actions.  See Infra, at Section 10.

Plaintiffs efforts regarding formal service have been delayed due to the absence of issued summons in this action.  New summons were forwarded to the court by overnight delivery on Thursday May 1, 2008, and have now been received with a return overnight delivery envelope.  It is anticipated that service will be formally effected by Tuesday, May 14, 2008 on all defendants.

In addition, on May 2, 2008, named plaintiffs delivered by hand a copy of the complaint in this action along with the court's April 30, 2008 Notice and attached Case management Order, Standing Order For all Judges Of the Norther District Of California contents of Joint Case Management Statement, and Judge Ilston's Standing Order, and the Order Assigning Judge Ilston to counsel of record for herein defendants in the two related actions identified in Section 10, Infra.

1    **B.      Defendants**

2        At present, the subject matter jurisdiction of this Court is uncertain, however, future

3    discovery may reveal that this Court lacks subject matter jurisdiction or that the Court may, in its

4    discretion, decline to exercise jurisdiction over this class action.

5        Under the Class Action Fairness Act ("CAFA"), district courts have original jurisdiction

6    over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000,

7    exclusive of interest and costs, and has been pled as class action in which, *inter alia*, any class

8    member is a citizen of a State different from any defendant.  *See* 28 U.S.C. § 1332(d)(2).

9    Plaintiffs Kirk and Kolleen Keilholtz are allegedly residents of California.  Defendant Lennox

10   International Inc. ("Lennox International") is a corporation organized under Delaware law with its

11   principal place of business in Richardson, Texas.

12       Under the "home state" exception to the CAFA, a district court must decline jurisdiction

13   over a class action in which two-thirds or more of the members of the plaintiff class, and all of the

14   primary defendants, are citizens of the state in which the action was originally filed.  *See* 28

15   U.S.C. § 1332(d)(4)(B).  Under the "local controversy" exception to the CAFA, a district court

16   must decline jurisdiction over a class action in which more than two-thirds of the members of the

17   plaintiff class, and at least one defendant, are citizens of the state in which the action was

18   originally filed, and certain other conditions are fulfilled.  *See id.* § 1332(d)(4)(A).  Additionally,

19   a district court may, but is not required to, decline to exercise jurisdiction, in the interests of

20   justice and looking at the totality of the circumstances, over a class action in which more than

21   one-third but less than two-thirds of the members of the plaintiff class, and all of the primary

22   defendants, are citizens of the state in which the action was originally filed.[1]  *See id.* § 1332(d)(3).

23

---

24   [1]  In making this determination, the district court considers: (1) whether the claims asserted involve matters of
     national or interstate interest; (2) whether the claims asserted will be governed by laws of the state in which the
25   action was originally filed or by the laws of other states; (3) whether the class action has been pleaded in a manner
     seeking to avoid federal jurisdiction; (4) whether the action was brought in a forum with a distinct nexus with the
     class members, the alleged harm, or the defendants; (5) whether the number of members of the plaintiff class who are
26   citizens of the state in which the action was originally filed is substantially larger than the number of citizens from
     any other state, and the citizenship of the other members of the plaintiff class is dispersed among a substantial
27   number of states; and (6) whether, during the three-year period preceding the filing of the class action, one or more
     other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.  See
28   28 U.S.C.A. § 1332(d)(3).

1    The primary Defendant in this action, Lennox Hearth Products Inc. ("Lennox Hearth"), is

2    a corporation organized under California law.  The percentage of purported class members who

3    reside in California is currently unknown.  However, discovery may reveal that one third, two

4    thirds or more of the plaintiffs are residents of this state.  If so, this Court may lack subject matter

5    jurisdiction or may decline to exercise jurisdiction over this action.

6    Assuming, *arguendo*, that this Court has subject mater jurisdiction, venue appears to be

7    proper in the Northern District of California, San Francisco Division.

8    With respect to personal jurisdiction issues, Defendant Lennox International has filed a

9    Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

10   jurisdiction.  Lennox International is not and has never been qualified to do business in the State

11   of California and does not conduct business in California.  It does not have any offices or any

12   employees in California.  It does not ship any merchandise to California, have any contracts with

13   suppliers or vendors in California, or do any advertising in California.  In fact, it does not design,

14   engineer, test, assemble, manufacture, distribute, supply, market, advertise, sell, maintain, or

15   place any products on the market in California or any other state.

16   Rather, Lennox International operates solely as a holding company for numerous

17   subsidiaries.  It performs no operations and conducts no business other than that of a holding

18   company.  It exercises no control and has no involvement in the day-to-day operations of its past

19   or present subsidiaries, including Defendants Superior Fireplace Company ("Superior") and

20   Lennox Hearth Products Inc.  ("Lennox Hearth").

21   Furthermore, the fact that Lennox International has defended itself in previous litigation

22   filed in California state court does not amount to an implicit consent to jurisdiction in the

23   Northern District of California.  Accordingly, Lennox Intentional should be dismissed from this

24   lawsuit for lack of personal jurisdiction.

25   **II.    FACTS**

26   **A.    Plaintiffs**

27   On December 21, 2006, eleven month old Marin Montgomery suffered third degree burns

28   to both palms and second degree burns to her nose and forehead when she tripped and came into

1    contact with a Superior direct vent gas fireplace designed, developed, tested, manufactured,

2    assembled, tested, packaged and distributed by defendants.  Lennox Hearth Products, Inc., is a

3    subsidiary of Lennox International, Inc. and potentially other Lennox entities.

4        Testing of the Superior brand fireplace which caused Marin's burns demonstrated that the

5    glass front infant Marin came into contact with reached a temperature well over 400 degrees

6    Fahrenheit during normal operation.  Testing of other Superior brand fireplaces has demonstrated

7    a basis to aver that all direct vent Superior fireplaces which have the following common

8    characteristics, a single pane sealed glass front which does not open (hereinafter collectively

9    "FIREPLACES"), reach similar maximum glass front temperatures during normal operation.  No

10   guarding or protection from contact with the heated glass is provided, and no visible warning is

11   affixed to the FIREPLACES.  Believing the FIREPLACES to constitute an unreasonably

12   dangerous hazard containing a defect intrinsic to each such device, the Arnold Law Firm filed a

13   personal injury action on behalf of the infant and her mother who witnessed the injury, and a class

14   action on behalf of a class of California owners of Superior brand direct vent fireplace owners

15   dating back 10 years from the date of the filing.

16       After further investigation and research which included the knowledge that Lennox Hearth

17   Products, Inc., (averred by defendants to be the designer and manufacturer of the FIREPLACES),

18   was a California Corporation with facilities including FIREPLACE testing facilities in California

19   led to the filing of this further class complaint, seeking redress nationally for owners of

20   FIREPLACES.

21       **B.    Defendants**

22       Plaintiffs have brought a national class action alleging that Defendants failed to warn

23   Plaintiffs, and the class they purportedly represent, that gas fireplaces become hot during

24   operation and that contact with the glass-front of these fireplaces can result in a burn to the skin.

25   Not surprisingly, Plaintiffs do not allege in this case that the class representatives or putative class

26   members have suffered physical injuries from the fireplaces due to the alleged failure to warn.

27   The reason, or course, is because reasonable individuals appreciate the obvious potential to be

28   injured by fire and fireplaces, and easily manage that risk, just as they mange the risk of drinking

1    hot beverages, or using stoves, ovens, and bar-b-ques, and, of more recent popularity, open gas

2    fire pits.  As a result, although injuries from fireplaces certainly can and do occur, the must be

3    considered in the overall context.  Such injuries are exceedingly rare in relation the millions of

4    fireplaces that have been in use throughout North America for the past 400 years.

5        Recognizing that they cannot possibly assert traditional strict products liability claims

6    given the lack of any allegation of resulting injuries in this case, Plaintiffs have instead cobbled

7    together claims based principally on inapplicable California statutes and common law, including:

8    (1) violation of California Business and Professions Code section 17200 ("UCL"); (2) violation of

9    the Consumer Legal Remedies Act ("CLRA"); and (3) unjust enrichment.  Of course, these types

10    of claims also require proof of damages, and so Plaintiffs have alleged, and will ultimately have

11    to prove among other things, that they, as well as every reasonable person in the United States

12    who owns a fireplace, had no inkling that touching the glass front of a burning fireplace could

13    cause injury, and would not have purchased their homes had they known of the risk.

14 **III.**    <u>**LEGAL ISSUES**</u>

15      **A.**     <u>**Plaintiffs**</u>

16        Plaintiff contends that defendants failed to disclose that their FIREPLACES were

17    defective to the extent that the glass front of each as designed and sold reach temperatures well in

18    excess of that necessary to cause second and third degree burns from even incidental, momentary

19    contact.  This information, relating to a critical matter of safety within defendants' exclusive

20    knowledge, is material to the average consumer.  Plaintiffs aver that the class would not have

21    purchased FIREPLACES nor allowed FIREPLACES to be installed or operated in their homes

22    had this information been timely disclosed to them.

23        Plaintiffs contend that defendants' omissions of a critical safety defect intrinsic to all

24    FIREPLACES amounts to a violation of California's Consumer Legal Remedies Act, specifically

25    section 1770(a)(5) thereof.  As a result of this violation, and based upon the same pattern of

26    omission and non-disclosure, defendants engaged in unlawful, unfair and fraudulent conduct

27    within the meaning of California's Unfair Competition law, specifically Ca. Bus. & Prof. Code

28    section 17203.  *Falk v General Motors Corp.*, 496 F.Supp.2d 1088 (N.D. Cal. 2007); *Chamberlan*

1    *v. Ford Motor Co.*, 369 F.Supp.2d 1168 (N.D. Cal. 2005).

2          Plaintiffs further contend that the conduct of defendants gives rise to a viable claim for

3    unjust enrichment as to each member of the national class.  *In re Abbott Laboratories Norvir*

4    *Anti-Trust Litigation*, 2007 WL 1689899 (N. D. Cal.); *Kelley v Microsoft Corporation*, 2008 WL

5    509332 (W.D. Wash.).

6          **B.**    **Defendants**

7          Defendants contend that Plaintiffs cannot maintain a CLRA claim.  A plaintiff can bring a

8    lawsuit against a defendant under the CLRA only if that defendant has engaged in unfair

9    competition and/or unfair or deceptive acts as part of a "transaction."  *See* Civ. Code § 1770(a).

10   According to the plain and unambiguous language CLRA, a defendant engages in a "transaction"

11   by entering into an agreement with an individual, i.e. a natural person, who purchases goods for

12   personal, family, or household purposes.  *Id.* §§ 1761, 1770, 1780.

13         Defendants have not engaged in a transaction with an individual who has purchased goods

14   for personal, family, or household purposes.  Defendants sell their fireplaces to distributors, who

15   in turn, sell the fireplaces to construction companies, who then build and sell homes containing

16   the fireplaces.  The distributors that Defendants sell the fireplaces to are not natural persons and

17   do not purchase the fireplaces for their own personal, family, or household purposes.

18   Accordingly, Plaintiffs cannot assert a CLRA claim against Defendants.

19         Defendants contend that Plaintiffs cannot maintain a CLRA damages claim for an

20   additional reason.  Before a plaintiff may file a CLRA action seeking damages, that plaintiff must

21   first comply with the notice requirements of Civil Code section 1782.  Specifically, at least thirty

22   (30) days or more before commencement of a CLRA action for damages, the plaintiff must:  (1)

23   notify the person or corporation alleged to have employed or committed methods, acts, or

24   practices declared unlawful by the CLRA of the particular alleged violations, and (2) demand that

25   the person or company correct, repair, replace, or otherwise rectify the goods or services alleged

26   to be in violation.  Cal. Civ. Code § 1782(a).  The notice must be placed in writing and sent by

27   certified or registered mail, return receipt requested, to the place where the transaction occurred

28   or to the corporate principal place of business.  *Id.*

1      Failure to strictly comply with these notice requirements result in the dismissal of a CLRA

2  claim for damages.  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41 (1975);

3  *Cattie v. Wal-Mart Stores Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007); *Laster v. T-Mobile*

4  *United States, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005); *Von Grabe v. Sprint*, 312 F.

5  Supp. 2d 1285, 1304 (S.D. Cal. 2003).

6      Plaintiffs never provided Defendants with notice of their claim in connection with this

7  national class-action lawsuit.  Instead, Plaintiffs chose to charge ahead with the filing of their

8  Complaint for damages, ignoring the clear purpose and intent of the CLRA notice requirements to

9  facilitate pre-complaint settlement.  *See Outboard Marine*, 52 Cal. App. 3d at 40-41 (explaining

10  that the notice requirements serve "to give the manufacturer or vendor sufficient notice of alleged

11  defects to permit appropriate corrections or replacements," and are designed "to provide and

12  facilitate precomplaint settlements of consumer actions wherever possible and to establish a

13  limited period during which such settlement may be accomplished").  Due to their failure to

14  adhere to these requirements, the Court should dismiss their CLRA claim for damages.

15      Assuming for the sake of argument only that Plaintiffs can overcome these obstacles to

16  their CLRA claim, at trial Plaintiffs will need to prove, among other things, (1) that Defendants

17  have engaged in one of twenty-three presumptively unlawful acts that are enumerated in Civil

18  Code section 1770, (2) that Plaintiffs actually relied on the unlawful acts; and (3) Plaintiffs

19  suffered an injury as a result.  *See generally Buckland v. Threshold Enterprises, Ltd.*, 155

20  Cal.App.4th 798, 811 (2007).  To establish a claim under the UCL, Plaintiffs must prove: (1) that

21  Defendants engaged in unfair, unlawful or fraudulent acts; (2) that memebers of the public are

22  likely to be deceived by these acts; (3) that Plaintiffs have suffered a distinct and palpable injury

23  as a result of these acts; (4) that Plaintiffs have lost money or property as a result of these acts.

24  *See id.* at 811-819.

25      Also, since Plaintiffs predicate their CLRA and UCL claims, in part, on the omission of

26  information, Plaintiffs must prove that Defendants made a representation that worked as a

27  concealment of a true fact, or alternatively, that Defendant failed to disclose information they had

28  a obligation to reveal.  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 835

936777.4                                    8

1   (2006) (stating that the "omission must be contrary to a representation actually made by the

2   defendant, or the omission must have been a fact the defendant was obligated to disclose").

3       Defendants contend that Plaintiffs and the putative class members cannot maintain a claim

4   for unjust enrichment.  Under California law, "[u]njust enrichment is not a cause of action...or

5   even a remedy, but rather a general principle, underlying various legal doctrines and remedies."

6   *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004); *see also Melchior v. New Line*

7   *Productions, Inc.*, 106 Cal. App. 4th 779, 794 (2003) (explaining that the phrase unjust

8   enrichment "does not describe a theory of recovery, but an effect: the result of a failure to make

9   restitution under circumstances where it is equitable to do so").  As a  result, a majority of the

10  state and federal courts to consider the issue have refused to recognize an independent cause of

11  action for unjust enrichment.  *See, e.g., Walker v. GEICO General Ins. Co.*, 2007 WL 499660, *4

12  (E.D. Cal. 2007) (stating that "California law does not recognize [a] claim for unjust

13  enrichment"); *Melchior*, 106 Cal. App. 4th at 794 (same); *McKell v. Washington Mutual, Inc.*,

14  142 Cal. App. 4th 1457, 1490 (2006) (same).

15      Finally, given that the proposed class includes individuals from states other than

16  California, the claims asserted by Plaintiffs raise significant issues with respect to (1) whether the

17  UCL and CLRA apply to out-of-state residents; (2) whether the court can constitutionally

18  exercise jurisdiction over non-resident class memebers and apply California to their claims; and

19  (3) whether choice of law rules allow application of California law to claims by out-of-state class

20  memebers.  *See generally Norwest Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999);

21  *Clothesrigger Inc. v. GTE Corp.,*191 Cal.App.3d 605 (1987).

22  **IV.   MOTIONS**

23      **A.   Plaintiffs**

24      Plaintiffs will file a motion for class certification.  See Section 9, infra Plaintiffs may

25  move to amend to add new class representatives or new defendants.  See Section 5, infra.

26      **B.   Defendants**

27      Defendants Lennox International and Lennox Hearth have filed a motion to dismiss

28  certain claims under Federal Rule of Civil Procedure 12(b)(6).  Defendant Lennox International

936777.4                                      9

1   has also filed a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.  Both

2   motions are scheduled to be heard on October 3, 2008.

3           Defendant Superior has not yet filed any response to the Complaint.  Counsel for Superior

4   has requested that Plaintiffs dismiss that entity from this action, as Superior merged into Lennox

5   Hearth more than eight years ago and no longer exists.  Counsel for the parties are still in the

6   process of meeting and conferring regarding a voluntary dismissal of this entity.  In furtherance of

7   these discussions, counsel have stipulated to extend the time for Superior to answer or otherwise

8   respond to the Complaint to July 14, 2008.  If Plaintiffs do not agree to voluntarily dismiss

9   Superior before that date, Superior will file a motion to dismiss under 12(b)(6).

10          All Defendants may file a motion for summary judgment if the Court certifies the class.

11  Defendants anticipate that other motions may need to be filed as this litigation progresses.

12  **V.      AMENDMENT OF PLEADINGS**

13          **A.      Plaintiffs**

14          Plaintiffs are currently investigating the possible addition of other Lennox entities

15  including a "Lennox Industries" by July 2008.  Plaintiffs may seek to add additional class

16  representatives.  No other amendments are presently contemplated.

17          **B.      Defendants**

18          Defendants Lennox Hearth and Lennox International have not yet answered the

19  Complaint.  Given the current status of the pleadings, Defendants Lennox Hearth and Lennox

20  International cannot predict whether amendments to their future pleadings will be necessary.

21  **VI.     EVIDENCE PRESERVATION**

22          **A.      Plaintiffs**

23          Plaintiffs and their counsel are taking active steps to preserve evidence relevant to the

24  issues reasonably evident in this action.  Plaintiffs and their counsel have no document

25  destruction or erasure policy applicable to this action, its files, evidence or papers.  Unknown as

26  to defendants.

27          **B.      Defendants**

28          Defendants are also taking active steps to preserve evidence relevant to the issues

1   reasonably evident in this action.  Defense counsel have advised their clients not to engage in any

2   document destruction/erasure program.

3   **VII.    DISCLOSURES**

4       **A.    Plaintiffs**

5       Due to the summons and service issues detailed in Section 1, there has been no initial

6   disclosure by either party.  Significant written discovery and some depositions have been

7   completed in the related actions identified in Section 10, infra, which should be considered part of

8   discovery in this action given the identity of issues in order to expedite forward progress of this

9   action.

10      **B.    Defendants**

11      Defendants proposed that the parties exchange initial disclosures on August 11, 2008.

12  Plaintiffs would not agree to this date and instead suggested a July 14, 2008, deadline.

13  Defendants suggested that the parties compromise and agree to exchange initial disclosures on

14  July 18, 2008.  Defendants have not received a response from Plaintiffs regarding this proposal.

15  **VIII.   DISCOVERY**

16      **A.    Plaintiffs**

17      Significant written discovery has been conducted in the Wooldridge California personal

18  injury litigation.  Defendants' production includes documents pertaining to the development,

19  design, manufacturing, costing, marketing, and customer inquiry and complaint history for a

20  small portion (eight) of the FIREPLACES comprising the hazardous product in this action.  Two

21  depositions have been conducted, one of the independent testing facility which provides ANSI

22  certification to some of defendants' FIREPLACES and a person most knowledgeable on an

23  FIREPLACE option called an optional screen panel.

24      The same written discovery requests which have led to the above-described disclosure in

25  the Wooldridge case are presently pending in the California Fields consumer action.  The parties

26  engaged in extensive meet in confer prior to the Wooldridge disclosure which should facilitate a

27  timely, hopefully complete, disclosure in Fields in the next two weeks.

28      Plaintiffs are planning e-discovery requests directed at electronic files which may contain

936777.4

11

memos, emails, minutes and other information relevant, inter alia, to their knowledge of and efforts to deal with the superheated glass fronts of their FIREPLACES.

Based upon discovery to date in the California actions, plaintiffs have identified the following necessary depositions of present or former Lennox employees:

1. Bill Rich;

2. Ken Hargrove;

3. Duke Mitchell;

4. Tom Krebs;

5. Gary Anderson;

6. Mark Campbell;

7. Don Kaufman;

8. Technical Writer Paranello;

9. Lisa Burkhart;

10. Don Craft;

11. Wendy Howells;

12. Robert E. Schjerven;

13. PMK re glass surface temperature testing;

14. PMK re investigation, research and knowledge regarding hazards and dangers of FIREPLACE glass surface testing;

15. PMK re defendants' participation and involvement relating to ANSI fireplace standard; and

16. PMK re defendants' corporate structure.

Discovery in the related California state court actions should, by agreement or court order, be considered discovery in this action.

**B.    Defendants**

*1.    Discovery Taken to Date*

No discovery has been conducted in this action to date.  Discovery has, however, been conducted in two state court actions, *Wooldridge* and *Fields*.  Plaintiffs have suggested that

1  discovery conducted in these two actions should be considered discovery in this action.  This

2  approach is entirely inappropriate.

3      The *Wooldridge* action primarily involves strict products liability and negligence claims

4  based on alleged manufacturing, design, and warnings defects.  Additionally, one of the Plaintiffs

5  asserts an emotional distress claim.  In stark contrast, this class action primarily involves statutory

6  UCL and CLRA claims premised on a failure to warn, fraudulent misrepresentations, and false

7  advertising.  Thus, because the issues involved in these actions are markedly different,

8  information and documents that may be discoverable in one action are not necessarily

9  discoverable or applicable to this action.

10     The *Fields* class action involves claims similar to those asserted in this federal action,

11 however, there are some notable differences between these two actions.  In the *Fields* action, the

12 Plaintiffs only purportedly represent California homeowners, while in this action, the Plaintiffs

13 purportedly represent homeowners in all fifty states.  Additionally, the products at issue in these

14 actions differ slightly, as the *Fields* action only involves Superior brand gas fireplaces, while this

15 action involves both Superior and Lennox brand fireplaces.

16     Given the similarities and differences, Defendants are concerned that applying discovery

17 conducted in the state court actions to this federal action could lead to discovery abuses.  For

18 example, while state court allows Plaintiffs to propound virtually unlimited numbers of special

19 interrogatories, federal court limits the parties to twenty-five interrogatories without leave of

20 court.  Consequently, Plaintiffs could circumvent the federal limitations by simply propounding

21 interrogatories in state court, then having those responses apply in this class action.  Other

22 significant differences in the state and federal rules, such as the limits on the number and duration

23 of depositions, the differences in privilege and privacy law, and the effect of requests for

24 admission, could also be circumvented under such a procedure.[2]

25     Defendants do not believe that this type of discovery abuses are a mere possibility, but are

26

27 [2] Defendants note that Plaintiffs have already propounded form interrogatories and a total of 370 special
   interrogatories and 341 requests for production on Defendants in the *Wooldridge* and *Fields* actions.  By allowing
   Plaintiffs to apply all of this discovery to this federal action, and allowing Plaintiffs to propound additional discovery
28 in this action, Plaintiffs will have the benefit of far more discovery requests than contemplated by the federal rules.

1    already in practice. For example, Plaintiffs recently propounded requests for production in the

2    *Fields* class action that seek information regarding Lennox brand fireplaces—a product not at

3    issue in the *Fields* class action, but at issue in this national action. Consequently, Plaintiffs

4    appear to be conducting discovery in *Fields* that is not reasonably calculated to lead to

5    discoverable information in that action, but rather calculated to lead to information for this action.

6         Defendants note that some of the documents and other information produced in the

7    *Wooldridge* and *Fields* actions are subject to court-approved protective orders. Under the terms

8    of those protective orders, designated documents may only be used for the purpose of that

9    litigation**.** Utilizing those document in this action may be a violation of the terms of that order.

10   Additionally, without the benefit of a protective order having been entered in this litigation,

11   Defendants would be deprived of the protections of that order as negotiated and ultimately

12   entered in state court.

13        Finally, Plaintiff's request for an order apparently deeming discovery conducted in a state

14   court action to be treated as if it had been conducted in this federal action amounts to a bazaar

15   request for consolidation (at least of discovery) of a federal and state court action. Plaintiff cites

16   no authority for such a request. Plaintiffs' proposal is also improper in that treating state court

17   discovery and depositions as if they had been conducted in this action would require a change in

18   the Federal Rules of Evidence at trial, which is entirely unauthorized. For all of these reasons,

19   written discovery, document production and depositions in the state court *Fields* and *Wooldridge*

20   actions should not be treated as if they had been conducted in this action.

21              *2.    Proposed Limitations or Modifications to Discovery Rules*

22        In addition to those depositions already taken in the *Wooldridge* and *Fields* state court

23   actions, Plaintiffs have identified an additional sixteen (16) witnesses whom they plan to depose

24   in this action. Defendants plan to depose the named class representatives as well as depose

25   several unnamed members of the class. Defendants therefore propose that each party be allowed

26   to take sixteen depositions, not including expert witnesses.

27        If this Court does not apply written discovery conducted in the *Wooldridge* and *Fields*

28   class action to this action, Defendants suggest that each party be allowed to propound a total of

1    forty (40) written interrogatories.  If the Court applies written discovery conducted in the

2    *Wooldridge* and *Fields* actions to this action, Defendants suggest that each party be allowed to

3    propound only a total of twenty (20) written interrogatories since Plaintiffs have already

4    propounded three hundred and seventy (370) special interrogatories in the state court actions.

5              3.    *Proposed Discovery Plan*

6          Defendants propose the following deadlines for discovery and other scheduling matters:

7              Initial Disclosures:  July 18, 2008

8              Class Certification Motion:  January 30, 2009

9              Opposition to Class Certification Motion:  February 27, 2009

10             Reply to Certification Motion:  March 6, 2009

11             Hearing on Class Certification Motion:  March 13, 2008

12             Initial Expert Disclosures:  March 31, 2009

13             Rebuttal Expert Disclosures:  April 31, 2009

14             Discovery Deadline:   September 31, 2009

15             Dispositive Motion Deadline:  October 31, 2009

16             Pretrial Conference:  December 31, 2009

17             Trial:  February 1, 2010

18   **IX.    CLASS ACTIONS**

19       **A.    Plaintiffs**

20             1.    *Operative Class Definition*

21         **All consumers who are residents and/or domiciliaries of the United States and who**

22   **own homes or other residential dwellings in which one or more HAZARDOUS**

23   **FIREPLACES have been installed within ten (10) years prior to the date of the filing of this**

24   **complaint.**

25             2.    *Class Prerequisites*

26         Plaintiffs present a readily ascertainable class of homeowners with FIREPLACES

27   installed in their homes and dwellings.  The number of persons meeting the class definition is

28   believed to exceed 150,000 in number.  Typicality is present to the extent, inter alia that each

homeowner's claim shares a common nucleus of operative fact regarding defendants' failure to timely disclose the extreme safety hazard posed by the FIREPLACES being installed in their homes. Each class member's claim is based upon an identical legal theory of recovery under the UCL and CLRA, and the nationally analogous equitable theory of unjust enrichment.

The fact issues common to the CLASS include:

- Class member ownership of homes or dwellings in which one or more FIREPLACES are installed;

- FIREPLACES which as designed and sold by defendants reach glass front temperatures in excess of 350 degrees and up to nearly 500 degrees Fahrenheit during intended operation;

- FIREPLACES which are sold without any guarding to prevent injurious contact with the hot glass front during intended operation; Defendants' knowledge that the glass fronts of their direct vent fireplaces which meet the definition of FIREPLACES as designed are hot and can still comply with ANSI testing while reaching temperatures of around 500 degrees Fahrenheit during intended operation;

- Whether the FIREPLACE design as it relates to glass temperature during intended operation renders the FIREPLACES defective;

- Whether defendants were aware of the alleged defect;

- Whether defendants had a duty to disclose its knowledge of the alleged defect;

- Whether defendants failed to disclose its knowledge of the alleged defect;

- Whether the alleged failure to disclose violated the CLRA;

- Whether the alleged failure to disclose was unfair, unlawful, and/or fraudulent under the UCL;.

- Whether owners lost money and/or were damaged as a result of defendants' alleged breach of the UCL and/or CLRA; and Whether defendants have been unjustly enriched by their sale of FIREPLACES to CLASS members.

Given the enormous size of the class, the relative small amount of recovery pursued by individual class members, and the compelling commonality of facts applicable to each class

1    member's claims, inter alia, the class action mechanism is superior and, in fact, perfectly

2    designed for this type of consumer case.

3                    *3.    National Class Issues*

4        Plaintiffs contend that certification of a national class by this Court is warranted and

5    manageable in the circumstances.  Lennox Hearth Products, Inc., which defendants contend is the

6    primary and (in their opinion) sole proper defendant, is a California corporation with its principal

7    place of operation in the State of California.  Discovery to date appears to confirm that the vast

8    majority of FIREPLACES have been developed, designed, tested and even manufactured,

9    assembled, packaged and distributed from this State.  *See Wershba v. Apple Computer, Inc.*, 91

10   Cal.App.4th 224, 241 (2001).

11       Because California has a significant aggregation of contacts to the claims of each class

12   member, the law of California should thus apply prima facie, and defendants will not be able to

13   demonstrate (which is their burden); (1) some actual conflict arising from the application of

14   California law; or (2) some other state's interest in having its own law applied.  *Washington*

15   *Mutual Bank v Superior Court*, 24 Cal.4th 906, 919-920 (2001).

16       Even assuming arguendo some reason exists for declining the application of California

17   law to the claims of all class members, plaintiffs believe that a manageable plan for the

18   adjudication of multiple states' claims, involving appropriate sub-classes delineated by

19   substantive differences in the law applicable to a small number of sub-groups, can be

20   accomplished.

21       Finally, even if the statutory claims under the UCL and CLRA were found to be not

22   amenable to class treatment for the proposed national class, plaintiffs believe that a national

23   unjust enrichment class should be certified.  *See generally, In Re Abbott Laboratories Norvir*

24   *Anti-Trust Litigation*, 2007 WL 1689899 (ND, Cal.  June 11, 2007) (There is "'a universal thread

25   throughout all common law causes of action for unjust enrichment.' The 'idiosyncratic

26   differences' between state unjust enrichment laws 'are not sufficiently substantive to predominate

27   of the shared claims.– (citations omitted)).

28

### 4. Timing of Motion

Plaintiffs believe that the motion for class certification should be ready for filing by January 1, 2009, absent some unforeseen difficulty in discovery. Plaintiffs will meet and confer regarding an expert declaration disclosure and briefing schedule which will allow for the class certification hearing to be completed before Spring 2009.

### B. **Defendants**

Pursuant to Northern District Local Rule 16.9, any party seeking to maintain a case as a class action – here the Plaintiffs – must include in their Case Management Statement: (1) the specific paragraphs of Rule 23 under which the action is maintainable as a class action; (2) a description of the class or classes in whose behalf the action is brought; (3) facts showing that the party is entitled to maintain the action under Rules 23(a) and (b); and (4) a proposed date for the Court to consider whether the case can be maintained as a class action.

### 1. Rule 23 Class Action Requirements

Plaintiffs have not set forth in their Complaint or in this Joint Case Management Statement what specific paragraphs of Rule 23 authorize this suit as a class action. Defendants do not know what paragraphs Plaintiffs believe are applicable to this lawsuit.

### 2. Description of Class

Plaintiffs have defined the class as "all consumers who are residents and/or domicilaries of the United States and who own homes or other residential dwellings in which one or more HAZARDOUS FIREPLACES have been installed within ten (10) years prior to the date of the filing of this complaint." (Compl. ¶ 2.) Plaintiffs have defined HAZARDOUS FIREPLACES as "Superior and Lennox brand single pane sealed glass front gas fireplaces" (*Id.* ¶ 8.)

Due to the ten-year time frame in this class definition, Defendants believe that many class members are asserting claims that are time-barred by the statute of limitations. Under the UCL, actions must be commenced "within four years after the cause of action accrued," Cal. Bus. & Prof. Code § 17208, while under the CLRA actions must be commenced "not more than three years from the date of the commission" of the unlawful act, Cal. Civ. Code § 1783. Similarly, claims founded in quasi-contract, such as unjust enrichment, are subject to the same statute of

1    limitations as fraud and must therefore be commenced within three years from the date the cause

2    of action accrued. *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1670 (1992).

3    Therefore, the claims of the putative class members who own a home in which a fireplace was

4    installed more than three to four years ago are time-barred.

5            Since neither the delayed discovery rule or fraudulent concealment doctrines apply to save

6    these untimely class claims, the UCL claims asserted by class members who own a home in

7    which a fireplace was installed more than four years ago are barred by the statute of limitations,

8    while the CLRA and unjust enrichment claims asserted by class members who own a home in

9    which a fireplace was installed more than three years ago are barred by the statute of limitations.

10                          *3.        Timing of Motion*

11           Plaintiffs initially suggested October 1, 2008, as the deadline for filing their motion for

12   class certification. After Defendants submitted their portion of the Joint Case Management

13   Statement to Plaintiffs, they proposed a January 1, 2009, filing deadline.

14           Defendants have filed motions to dismiss that will not be heard until October 3, 2008.

15   The motions seek to dismiss the CLRA and unjust enrichment claims, and also move to dismiss

16   untimely claims asserted by class members that are barred by the statute of limitations. Given

17   that the parties will not know what claims and class members will remain as of October 1, 2008,

18   the date Plaintiffs initially suggested for their class certification motion, Defendants believe that

19   filing such a motion at that time would be premature. Additionally, since the motion to dismiss

20   may necessitate the filing of an Amended Complaint, which Defendants will subsequently need to

21   answer, the second deadline Plaintiffs propose of January 1, 2009, also seems premature.

22           Moreover, Defendants would like to conduct discovery on class issues prior to the  motion

23   for certification. Defendants believe that such discovery can be reasonably accomplished within

24   approximately six months.

25           Given the need for class-wide discovery, and the fact that the motions to dismiss will not

26   be heard until October 3, 2008, Defendants suggest that the class certification motion be filed no

27   later then January 30, 2009, that the opposition be filed no later than February 27, 2009, and any

28   reply brief be filed no later than March 6, 2009. Defendants suggest that oral argument on the

1  motion be conducted on March 13, 2008, or as soon thereafter as the Court's schedule permits.

2  **X.    RELATED CASES**

3      **A.    Plaintiffs**

4      Wooldridge, et al v. Superior Fireplace Company, Sacramento County Superior Court

5  Case NO. 07AS00920

6      Anissa Nelson Fields and Jerry Fields for themselves and for those similarly situated, v.

7  Superior Fireplace Company, et al., Sacramento County Superior Court Case NO. 07AS00918

8      **B.    Defendants**

9  *Perry et al. v. Superior Fireplace Company, Lennox Hearth Products Inc. and Lennox*

10  *International Inc.*, U.S. District Court, Northern District of California, Case No. 08-cv-00834,

11  (the "*Perry* class action").  The Plaintiffs in the *Perry* class action are the neighbors of the

12  Plaintiffs in this *Keilholtz* action.  Both sets of Plaintiffs are represented by the Clayeo C. Arnold

13  law firm (the "Arnold law firm").

14      The Arnold law firm filed the *Perry* and *Keilholtz* Complaints on the same day in the

15  same court.  The Complaints include identical allegations, identical claims, and identical class

16  definitions.  The Arnold law firm did not file a Notice of Related case in either action.

17      About a week after the filing of the *Perry* and *Keilholtz* Complaints, the Arnold law firm

18  alerted Defendants to the filing of the *Perry* class action, but not the *Keilholtz* class action.  The

19  Arnold law firm did not actually inform Defendants about the *Keilholtz* lawsuit until three months

20  after the filing of the Complaint.

21      Upon the filing of the two Complaints, the *Perry* class action was assigned to Magistrate

22  Judge Maria Elena James and the *Keilholtz* class action was assigned to Magistrate Judge Edward

23  M. Chen.  On March 3, 2008, the Perrys filed a consent to proceed before Magistrate Judge

24  James.  On April 22, 2008, the Keilholtzs filed a declination to proceed before a Magistrate Judge

25  Chen.  Six days later, on April 28, 2008, this action was reassigned to the Honorable Susan

26  Illston.  Seven days later, the Perrys voluntarily dismissed their lawsuit against Defendants.

27

28

936777.4

[PROPOSED] INITIAL JOINT CASE MANAGEMENT STATEMENT

XI.    **RELIEF**

   A.    **Plaintiffs**

   The class is believed to comprise in excess of 150,000 class members and over 300,000 individual FIREPLACES.  The class seeks the following relief:

      *1.    CLRA*

   Compensatory damages of approximately $1,000.00 per FIREPLACE and punitive damages, attorneys fees and costs.

      *2.    UCL*

   Restitution of approximately $300.00 - $500.00 pre FIREPLACE plus additional available restitution, attorneys fees and costs.

      *3.    Unjust Enrichment*

   Restitution and disgorgement into fluid recovery fund.

   B.    **Defendants**

   Defendants have not filed any counterclaims for which they seek relief.

XII.    **SETTLEMENT AND ADR**

   The parties believe that private mediation would be the most appropriate ADR method for this litigation.  However, mediation would not likely be appropriate until after the court's ruling on the motion for class certification.

XIII.    **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:**

   Declination of consent has lead to the assignment of Judge Illston.

XIV.    **OTHER REFERENCES**

   At this time, the parties do not believe that this action would be suitable for reference to binding arbitration or a special master.  Also, because the parties are currently unaware of any other similar litigation in any other judicial district, the parties believe that assignment to the Judicial Panel on Multidistrict litigation would not be appropriate.

XV.    **NARROWING OF ISSUES**

   At this stage, the parties do not believe that a narrowing of issues can be accomplished through agreement of the parties.

1    With respect to narrowing the issues through motion practice, please see Part IV, *supra*.

2    Defendants believe that the punitive damage issue should be bifurcated from the liability portion

3    of trial.  Other issues may need to be bifurcated if sub-classes are created.

4    **XVI.   EXPEDITED SCHEDULING**

5    The parties do not believe that this class action can be handled on an expedited basis.

6    Plaintiffs anticipate making a proposal regarding jurisdictional discovery at the time of the status

7    conference.

8    **XVII.  SCHEDULING**

9        **A.      Plaintiffs**

10   On Saturday July 5, 2008, Plaintiffs received Defendants' proposed discovery plan.

11   Plaintiffs will attempt to make proposals regarding discovery scheduling prior to or at the time of

12   the Initial Status Conference.

13       **B.      Defendants**

14   Defendants propose the following scheduling deadlines:

15       Initial Disclosures:  July 18, 2008

16       Class Certification Motion:  January 30, 2009

17       Opposition to Class Certification Motion:  February 27, 2009

18       Reply to Certification Motion:  March 6, 2009

19       Hearing on Class Certification Motion:  March 13, 2008

20       Initial Expert Disclosures:  March 31, 2009

21       Rebuttal Expert Disclosures:  April 31, 2009

22       Discovery Deadline:   September 31, 2009

23       Dispositive Motion Deadline:  October 31, 2009

24       Pretrial Conference:  December 31, 2009

25       Trial:  February 1, 2010

26   **XVIII.  TRIAL**

27       **A.      Plaintiffs**

28   Plaintiff request and believe they are entitled to a jury trial on their CLRA claim.  The

936777.4                                    22

1  equitable claims under the UCL and for unjust enrichment are subject to court trial.  Plaintiffs'

2  estimate 30-35 days as the expected length of trial.

3      **B.      Defendants**

4      If the Court dismisses the CLRA claim or dismisses the CLRA request for damages,

5  Plaintiffs may not be entitled to a jury trial.  The length of trial is difficult to estimate given the

6  current status of the pleadings, however, 30-35 days may be accurate.

7  **XIX.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

8      The following non-parties are or may be interested entities:

9          Lennox Industries Inc.

10          LHP Holdings Inc.

11

12  DATED:  July 7, 2008            CLAYEO C. ARNOLD
                                    A Professional Law Corporation

13

14                                  By:  /s/ Kirk Wolden (as authorized on July 7, 2008)

15                                       KIRK J. WOLDEN
                                         Attorneys for the **CLASS**

16  DATED:  July 7, 2008            DOWNEY BRAND LLP

17

18                                  By:  /s/ William Warne

19                                       WILLIAM R. WARNE
                                         Attorneys for Defendants

20

21

22

23

24

25

26

27

28