DOWNEY BRAND LLP
WILLIAM R. WARNE (Bar No. 141280)
MICHAEL J. THOMAS (Bar No. 172326)
MEGHAN M. BAKER (Bar No. 243765)
555 Capitol Mall, Tenth Floor
Sacramento, CA 95814-4686
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
bwarne@downeybrand.com
mthomas@downeybrand.com
mbaker@downeybrand.com

Attorneys for Defendants
SUPERIOR FIREPLACE COMPANY; LENNOX
HEARTH PRODUCTS INC.; LENNOX
INTERNATIONAL INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KIRK KEILHOLTZ and KOLLEEN KEILHOLTZ for themselves and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERIOR FIREPLACE COMPANY; LENNOX HEARTH PRODUCTS INC.; LENNOX INTERNATIONAL INC. and DOES 1 through 25, Inclusive,<br><br>Defendants. | Case No. C 08-00836SI<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**<br><br>Date:       October 3, 2008<br>Time:       9:00 a.m.<br>Location:   Courtroom 10<br><br>Complaint Filed February 6, 2008 |

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant Superior Fireplace Company ("Defendant") requests that this Court take judicial notice of the contents of the attached documents. Fed. R. Evid. 201; *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207, fn. 5 (9th Cir. 1995*), rev'd on other grounds* 520 U.S. 548 (1997). A court may take judicial notice of pleadings, files and records in related cases pending in its own court, as well as in different courts. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). A court may also take judicial notice of matters of public record. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500,

1    504 (9th Cir. 1986). Accordingly, Defendant requests that this Court take judicial notice of the

2    attached court documents which are directly related to the instant action:

3    1.    Class Action Complaint filed by Plaintiffs Kirk Keilholtz and Kolleen Keilhotz in this

4    Court on February 6, 2008. A true and correct copy is attached hereto as **Exhibit 1**.

5    2.    Plan and Agreement of Merger filed with the State of California, Secretary of State, on

6    January 11, 2001. A true and correct copy is attached hereto as **Exhibit 2**.

7    3.    Corporation Status Inquiry produced by the State of California, Secretary of State on

8    March 26, 2008. A true and correct copy is attached hereto as **Exhibit 3**.

9

10   DATED: July 14, 2008                    DOWNEY BRAND LLP

11

12                                          By: /s/ William R. Warne

13                                                WILLIAM R. WARNE
                                                  Attorney for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE ISO MOTION TO DISMISS

# Exhibit 1

1  **CLAYEO C. ARNOLD**
   **A Professional Corporation**
2  Clayeo C. Arnold, SBN 65070
   Kirk J. Wolden, SBN 138902
3  608 University Avenue
   Sacramento, CA 95825
4  Telephone: (916) 924-3100
   Fax:  (916) 924-1829
5
6  **Attorney for the Class**



E-filing
FILED
FEB - 6 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

7

8               **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                    **(OAKLAND DIVISION)**

11

12  **KIRK KEILHOLTZ and KOLLEEN**          No.  **C08-00836**
    **KEILHOLTZ for themselves and on**
13  **behalf of those similarly situated,**     **INDIVIDUAL AND CLASS**
                                              **ACTION COMPLAINT FOR**
14        **Plaintiffs,**                       **EQUITABLE RELIEF AND**
                                              **RESTITUTION, AND FOR**
15  **vs.**                                     **DAMAGES**

16  **SUPERIOR FIREPLACE COMPANY;**
    **LENNOX HEARTH PRODUCTS, INC.;**          **Demand for Jury Trial**
17  **LENNOX INTERNATIONAL, INC. and**
    **DOES 1 through 25, Inclusive,**          
18
          **Defendants.**
19

20        Plaintiffs, KIRK KEILHOLTZ and KOLLEEN KEILHOLTZ, by and through Plaintiffs'

21  undersigned counsel, individually and on behalf of all others similarly situated, hereby set forth

22  in this Individual and Class Action Complaint claims for equitable, injunctive and declaratory relief,

23  restitution, and damages.

24        This Class Action is brought on behalf of all Consumers (referred to herein collectively as

25  "Plaintiffs," "class members," "Consumers" and "Homeowners") who purchased a HAZARDOUS

26  FIREPLACE or a home or other residential dwelling or space with a HAZARDOUS FIREPLACE

27  installed in it.  HAZARDOUS FIREPLACES, as that phrase is defined at paragraph 8, *infra*, have

28  been developed, designed, manufactured, assembled, tested, marketed, promoted, advertised,

Individual and Class Action Complaint                1

1 | sold and/or distributed by defendants SUPERIOR FIREPLACE COMPANY, LENNOX HEARTH

2 | PRODUCTS, INC., and LENNOX INTERNATIONAL, INC. since at least 1999.

3 |     HAZARDOUS FIREPLACES are hazardous and should not have been sold to the CLASS

4 | because said FIREPLACES are designed such that the glass front of same, installed in homes at

5 | a height accessible even to small children and infants, can, and under reasonably expected

6 | consumer use does, reach temperatures well in excess of that necessary to cause third degree

7 | burns even from momentary contact with the super heated glass.

8 |     Defendants have and continue to their significant financial gain to sell HAZARDOUS

9 | FIREPLACES despite knowledge of the extreme danger posed by the unguarded glass front, and

10 | without taking any or reasonable steps to mitigate that unreasonable danger.

11 |     WHEREFORE, plaintiffs individually and on behalf of the CLASS aver as follows:

12 |     1.    At all times relevant to this action, Defendants intentionally, recklessly, and/or

13 | negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects and

14 | disadvantages of their HAZARDOUS FIREPLACES and advertised, promoted, marketed, sold, and

15 | distributed HAZARDOUS FIREPLACES as a safe fireplace when, in fact, Defendants had reason to

16 | know, and did know, that their HAZARDOUS FIREPLACE was not safe or even useable at all for

17 | its intended purposes, and that their HAZARDOUS FIREPLACES posed a serious safety risk,

18 | including the risk of inflicting maiming and other catastrophic physical injuries to all individuals,

19 | including but not limited to small children, coming in contact with a HAZARDOUS FIREPLACE.

20 |     2.    Pursuant to Rules 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4)(A) of the Federal

21 | Rules of Civil Procedure, Plaintiffs will seek certification of a national Consumer Class consisting

22 | of:

23 |         **All consumers who are residents and/or domiciliaries of the United**

        **States and who own homes or other residential dwellings in which one**

24 |         **or more HAZARDOUS FIREPLACES have been installed within ten (10)**

        **years prior to the date of the filing of this complaint.**

25 |

26 |     3.    This is a Class Action filed on behalf of a national class of Consumers residing in the

27 | United States who own homes and other residential dwellings installed with one or more

28 | HAZARDOUS FIREPLACES, which FIREPLACES were installed within ten (10) years prior to the

Individual and Class Action Complaint           2

1    date of the filing of this complaint.  This action seeks injunctive and declaratory relief, damages,

2    restitution, and disgorgement arising out of Defendants' wrongful misconduct resulting in the

3    distribution and sale of HAZARDOUS FIREPLACES.

**JURISDICTION AND VENUE**

4        4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)

5    because this action is between citizens of different states, a class action has been plead, and

6    the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests

7    and costs.  None of the causes of action stated herein have been assigned or otherwise given

8    to any other court or tribunal.

9        5.      Venue is proper in this District pursuant to 28 U.S.C.  1391(a), (b) and (c), 28

10   U.S.C. 1407 and 28 U.S.C.  22.  Defendants do substantial business in the State of California,

11   and within this Federal Judicial District, moreover, based on information and belief, they are

12   registered to and in fact doing business within the State of California, and otherwise maintain

13   requisite minimum contacts with the State of California.  Additionally, Defendants advertise in

14   this district, receive substantial compensation and profits from sales of HAZARDOUS

15   FIREPLACES in this District, and have and continue to conceal and make material omissions in

16   this District so as to subject them to *in personam* jurisdiction in this District.  Furthermore,

17   venue is proper in this District because at least one HAZARDOUS FIREPLACE to which this

18   litigation relates is installed, *inter alia*, in representative **CLASS** plaintiff's home located in this

19   District and Division.[1]

**PLAINTIFFS**

20       6.      At all times herein relevant, plaintiffs were individuals residing in the County of

21   Contra Costa, State of California.

22       7.      Plaintiffs bring this action as a class action.  In this regard, plaintiffs act not only for

23   themselves but as representatives of a class of similarly situated individuals who fall within the

24   description set forth in paragraph 3, *infra*.

25

26

27   _____

28       [1]See Paragraph 8, *supra*, for the definition of "HAZARDOUS FIREPLACE."

Individual and Class Action Complaint                    3

1

## HAZARDOUS FIREPLACE

2     8.     Defendants are the developers, designers, manufacturers, assemblers, testers,

3   inspectors, marketers, advertisers, distributors and sellers of Superior and Lennox brand single

4   pane sealed glass front gas fireplaces (hereafter "HAZARDOUS FIREPLACES"). Plaintiffs are the

5   owners of homes and/or other residential dwellings in which said FIREPLACES are installed.

6

## DEFENDANTS

7     9.     Defendant LENNOX HEARTH PRODUCTS, INC., ("Lennox Hearth") is a California

8   corporation   with   its   principal   operations,   including   the   development,   design,   testing,

9   manufacturing and assembly, and distribution of a substantial percentage of HAZARDOUS

10   FIREPLACES, occurring within the State of California.   At all times relevant, Lennox Hearth

11   designed, tested, manufactured, assembled, distributed, supplied, marketed, tested, advertised,

12   provided warnings and instructions for, and/or sold the HAZARDOUS FIREPLACES.

13     10.     Defendant LENNOX INTERNATIONAL, INC., ("Lennox International") is a

14   Delaware corporation with its principal place of business in the State of Texas.   At all times

15   relevant, Lennox International developed, designed, manufactured, assembled, tested, distributed,

16   supplied, marketed, advertised, provided warnings and instructions for, and/or sold HAZARDOUS

17   FIREPLACES.

18     11.     Defendant SUPERIOR FIREPLACE COMPANY ("Superior") is a corporation of

19   unknown form and origin believed to have or have had its principal place of business in the State

20   of California. At all or some portion of the relevant time frame of this litigation, Superior designed,

21   manufactured, assembled, distributed, supplied, marketed, advertised, tested, provided warnings

22   and instructions for, and/or sold the HAZARDOUS FIREPLACES.

23     12.     Plaintiffs are further informed and believe and thereon allege that defendants, and

24   each of them, were at all times herein mentioned the agents, servants, controlling and actively

25   participating parents, subsidiaries, affiliates, relations, or employees of each of the other

26   defendants, and were at all times herein mentioned acting within the course and scope of said

27   agency, service and relationship, and with the consent and knowledge of, or in consort with, each

28   other defendant.

1    13.    In engaging in the conduct alleged herein, each Defendant acted as the agent for
2    each of the other Defendants, or those defendants' predecessor in interest.

3                                    **GENERAL ALLEGATIONS**

4    14.    Defendants and each of them offered for distribution and sale the HAZARDOUS
5    FIREPLACES with the specific intention and purpose that said FIREPLACES be installed by builders
6    and others in residential homes and other dwellings throughout the United States.    In so
7    conducting themselves, defendants represented to consumers that said FIREPLACES were safe,
8    of merchantable quality, and fit for their intended and reasonably foreseeable uses, and with
9    sufficient protections and warnings regarding potential dangers and hazards which reasonable
10   consumers would expect and assume to be provided in order to make a decision whether to
11   purchase a home installed with the HAZARDOUS FIREPLACES or purchase a HAZARDOUS
12   FIREPLACE.

13   15.    Defendants and each of them failed to disclose the true facts, *to wit*, that the
14   HAZARDOUS FIREPLACES are a dangerous and patently unsafe hazard to be used in a residence
15   given the ability of the unguarded single pane glass sealed front to heat up to temperatures in
16   excess of 350 degrees Fahrenheit - well in excess of a temperature necessary to cause third
17   degree burns to skin contacting the glass even momentarily.    This undisclosed and concealed
18   hazard, previously known to defendants, creates an unreasonable potential for harm to owners
19   of residential homes, dwellings and structures throughout the United States.

20   16.    As a result of Defendants' conduct, and their omissions, the putative **CLASS**,
21   including plaintiffs, purchased and/or otherwise came to own residential homes, dwellings and
22   structures in which HAZARDOUS FIREPLACES are installed.

23   17.    Plaintiffs and the **CLASS** lost money and suffered monetary damages as a result.
24   Specifically, **CLASS** members paid a readily ascertainable amount for the HAZARDOUS
25   FIREPLACES, which price along with the cost of installation was incorporated in the price of the
26   homes and residences purchased.    **CLASS** members have or will suffer further damage to the
27   extent that said owners have or will incur the cost of replacing or retrofitting the HAZARDOUS
28   FIREPLACES, and replacing said FIREPLACES with safe, merchantable products.

Individual and Class Action Complaint                5

1

## CLASS ALLEGATIONS

2      18.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek

3  certification of a national Class defined as follows:

4          **All Consumers who are residents and/or domiciliaries of the United**

5      **States and who own homes or other residential dwellings in which one or more HAZARDOUS FIREPLACES have been installed within ten (10) years prior to the date of the filing of this complaint.**

6

7      19.    This action has been brought and may properly be maintained and certified as a

8  **CLASS** action because:

9      (a)    The questions and issues of law or fact raised herein are of a common or

10  general interest, affecting a large **CLASS** of individuals and the public at large;

11      (b)    The **CLASS** consists of a sufficiently large group of individuals, believed to

12  exceed 100,000 members, and is so large that it is impractical to present all

13  members of the **CLASS** before the Court as individual plaintiffs.  Plaintiffs are

14  informed and believe that the identity of class members is readily ascertainable from

15  various sources including the examination of residences and builder records, and/or

16  via simple notice by publication;

17      (c)    The questions of law or fact common to the **CLASS** are substantially similar

18  and predominate over those questions affecting only specific members of the

19  **CLASS.**

20      (d)    The **CLASS** is united by a community of interest in obtaining appropriate

21  equitable relief including injunctive relief including recall and replacement of the

22  HAZARDOUS FIREPLACES and restitution, penalties, damages, and other available

23  relief designed to redress the wrongful conduct of Defendants.

24      (e)    Plaintiffs are members of the **CLASS**, and their claims are typical of the

25  **CLASS.**

26      (f)    Named Plaintiffs will fairly and adequately represent the claims of the

27  **CLASS**, and protect the interests of the **CLASS** without exercising personal interest

28  or otherwise acting in a manner inconsistent with the best interests of the **CLASS**

1    generally.

2    (g)      Named plaintiffs have retained attorneys experienced in the litigation of class

3    and representative claims, and in the area consumer protection litigation who have

4    agreed to and will responsibly and vigorously advocate on behalf of the **CLASS** as

5    a whole.

6    (h)      Without **CLASS** certification, the prosecution of separate consumer actions

7    by individual members of the **CLASS** would be impracticable and financially difficult,

8    and create a risk of repetitive, inconsistent and varying adjudications.  This would

9    have the effect of establishing incompatible standards of conduct for Defendants,

10   discouraging the prosecution of meritorious but small claims, and/or result   in

11   adjudications which would be dispositive of the interests of other **CLASS** members

12   not parties to the adjudication, or otherwise substantially impair the ability of

13   **CLASS** members to protect their rights and interests.

14   (i)      Defendants have acted or refused to act on grounds generally applicable to

15   the **CLASS**, thereby making the award of equitable relief and/or restitution

16   appropriate to the **CLASS** as a whole.

17   (j)      The class action procedure is superior to other methods of adjudication, and

18   specifically designed to result in the fair, uniform and efficient adjudication of the

19   claims presented by this complaint.  This **CLASS** action will facilitate judicial

20   economy and preclude the undue financial, administrative and procedural burdens

21   which would necessarily result from a multiplicity of individual actions.

22                          **FIRST CAUSE OF ACTION**

23                          **(Unfair Business Practices)**

24   20.      Plaintiffs hereby incorporate by reference paragraphs 1-19, as though fully set forth

25   herein, and aver against Defendants, and each of them.

26   21.      California Business & Professions Code section 17200 precludes unfair competition,

27   *i.e.,* the employment of any unlawful, unfair or fraudulent business acts or practices; and any

28   unfair, deceptive, untrue or misleading advertising violative of Ca. Bus. & Prof. Code section

Individual and Class Action Complaint                7

1  17500.  Said prohibition extends to any act, omission or conduct or pattern of activity engaged

2  in within California which affects the rights of consumers within the State of California and

3  elsewhere.

4          22.    In marketing and selling the HAZARDOUS FIREPLACES, and in otherwise causing

5  said FIREPLACES to be placed into the stream of commerce for use by consumers in the United

6  States without disclosing the serious burn hazard they posed, and in continuing to conceal this

7  critical safety information regarding the dangers associated with the use of the HAZARDOUS

8  FIREPLACES, defendants and each of them made available for consumer use a dangerous and

9  patently unsafe product which is not safely useable for its intended purpose.  Defendants were

10  and remain obligated to make disclosure of the hazard associated with said FIREPLACES because

11  of, *inter alia*, the public's reasonable expectation that said FIREPLACES would not under normal

12  and expected use heat up on the exposed single pane glass sealed door to temperatures sufficient

13  to inflict third degree burns and other catastrophic injuries on persons by simply inadvertently

14  contacting with the surface of said glass front.  In failing to disclose what they knew and was

15  readily apparent to defendants but not reasonable consumers regarding this critical safety issue,

16  defendants engaged fraudulent conduct under Ca. Bus. & Prof. Code section 17200, and false and

17  misleading advertising within the meaning of Ca. Bus. & Prof. Code section 17500 .

18          23.    The aforementioned conduct is unlawful within the meaning of the UCL in that, *inter*

19  *alia*, said conduct violates Ca. Civil Code section 1750, et seq. (hereinafter "CLRA") to the extent

20  that defendants and each of them represented, by the omission and concealment of critical safety

21  information well-known to defendants, that the HAZARDOUS FIREPLACE: (a) had characteristics,

22  uses or benefits that it did not have in violation of Section 1770(a)(5) of the CLRA; and (b) was

23  of a particular standard, quality or grade when it was of another in violation of 1770(a)(7) of the

24  CLRA.

25          24.    Defendants' conduct is unfair within the meaning of the UCL in that the the alleged

26  consumer injury is substantial, creating an unreasonable risk for catastrophic physical injury to any

27  persons coming into contact with HAZARDOUS FIREPLACES.  There is no counterveiling benefit

28  to having or continuing to conduct themselves in the wrongful manner averred to herein.

Individual and Class Action Complaint                    8

1    25.    Were it not for the unfair competition of defendants, the **CLASS** would not have

2    been able to nor would have purchased homes and residences within which the HAZARDOUS

3    FIREPLACES had been installed, would not have installed HAZARDOUS FIREPLACES in their

4    homes, and would not have continued to allow said FIREPLACES to remain installed in their homes

5    and other dwellings.

6    26.    The members of the **CLASS** have and will continue to suffer injury in fact and lose

7    money as a direct result of Defendants' unfair competition in that each has expended money to

8    purchase residences incorporating HAZARDOUS FIREPLACES or to purchase HAZARDOUS

9    FIREPLACES, and have or will be caused to expend money and to remove said FIREPLACES from

10    the homes and other residences they purchased and own.

11    27.    As a result of Defendants' unfair competition, the **CLASS** is entitled to appropriate

12    equitable relief including injunctive relief, and available monetary relief in the form of restitution

13    (including fluid recovery if certified as a class action).  Plaintiffs are also entitled to recover

14    penalties as well as an award of attorneys' fees for prosecuting this action.

15    <u>**SECOND CAUSE OF ACTION**</u>

16    **(Violation of the Consumer Legal Remedies Act)**

17    28.    Plaintiffs, individually and for the **CLASS**, hereby incorporate by reference

18    paragraphs 1-27, as though fully set forth herein, and averred against defendants, and each of

19    them.

20    29.    California Civil Code Section 1750, *et seq.*, precludes defendants from representing

21    that goods have characteristics and benefits which they do not have in transactions which are

22    intended to result, or which have resulted in the sale, installation in homes and other dwellings,

23    ownership and use of HAZARDOUS FIREPLACES by consumers.

24    30.    In engaging in the conduct described herein, as more specifically set forth in

25    paragraphs 14-16 of this Complaint, *supra*, defendants, and each of them, violated the Consumer

26    Legal Remedies Act including Civil Code section 1770(a)(5).

27    31.    Were it not for the misconduct of defendants, the **CLASS** would not have been able

28    to and would not have purchased homes and residences within which the HAZARDOUS

Individual and Class Action Complaint                    9

1  FIREPLACES had been installed, would not have installed HAZARDOUS FIREPLACES in their

2  homes, and would not have continued to allow said FIREPLACES to remain installed in their homes

3  and residences.

4        32.    The members of the **CLASS** have and will continue to suffer injury in fact, and lose

5  money and suffer damages as a direct result of defendants' unfair competition in that each has

6  expended money to purchase residences incorporating HAZARDOUS FIREPLACES and have or will

7  be caused to expend money and to remove said FIREPLACES from the homes and other

8  residences they purchased and own.

9        33.    Notice in accordance with Ca. Civil Code section 1780 has been given on plaintiffs'

10  behalf, a copy of which is attached hereto as Exhibit "A" to this Complaint. Despite this notice and

11  demand for action, defendants have failed and refused to recall, remove or otherwise remedy the

12  situation existing as a result of the presence and use of the HAZARDOUS FIREPLACES in homes

13  and other dwellings in this state and throughout the United States.

14        34.    Defendants, and each of them, know and have known, or have otherwise

15  consciously ignored and disregarded, the patently dangerous temperatures the HAZARDOUS

16  FIREPLACES are designed and manufactured to reach under normal, expected and reasonable

17  use, and the extent of injury and disfigurement said FIREPLACES will cause. Defendants designed

18  these fireplaces, which are in reality principally "ornamental" and serve no meaningful functional

19  use at heights and in positions in family rooms which make vulnerable children and infants the

20  HAZARDOUS FIREPLACES' most likely victims. They are aware of the extreme temperatures and

21  continue to produce and sell HAZARDOUS FIREPLACES, claiming that they have not figured out

22  a way to deal with the problem. Defendants have and continue to recklessly and intentionally

23  ignore the danger they have created, failing to rectify the enormous risk by installing warnings

24  or guards, even after receipt of plaintiffs' CLRA notice demanding such action, and with knowledge

25  that other manufacturers of similar fireplace products have for several years been selling said

26  similar products with mandatory protective glass front guards.

27        35.    Defendants further have failed and continue to fail to recognize the reckless danger

28  their HAZARDOUS FIREPLACES have created by ignoring the existence of an increasing body of

Individual and Class Action Complaint                    10

1   empirical evidence confirming the enormity of the problem their HAZARDOUS FIREPLACES have

2   caused. For example, when Deirdre Wooldridge took her eleven month old daughter, Marin, to

3   U.C. Davis Medical Center hospital in December, 2006, suffering from third degree palmar burns

4   caused by a HAZARDOUS FIREPLACE, she was advised that her child was the eleventh child that

5   month treated for serious gas fireplace burns. Recent studies, including a 2004 publication by the

6   American Burn Association, memorialize the seriousness of the problem created by the

7   HAZARDOUS FIREPLACES, recognizing: "an alarming [15 fold] increase in the incidence of

8   pediatric palmar burns associated with gas fireplaces[,]" concluding that "the increasing popularity

9   of these units places more children at risk." Given their preeminence in the industry, and their

10  significant market share as a manufacturer and supplier of gas fireplaces, the statistics and

11  information which are discussed herein are directly and reasonably attributable to the defendants'

12  conduct in designing, manufacturing, distributing, advertising, marketing, and selling its

13  HAZARDOUS FIREPLACES.

14          36.    The information, including that referred to in paragraphs 33-35, *supra*, and

15  knowledge was known to and ignored by defendants' officers and directors who made profit-

16  directed decisions in a residential construction boom market in conscious disregard of the safety

17  and well-being of California children and families, entitling the **CLASS** to an award of punitive

18  damages.

19          37.    As a result of the violations of the Consumer Legal Remedies Act engaged in by

20  defendants, the **CLASS** is entitled to injunctive relief, monetary and punitive damages, penalties,

21  and an award of attorneys' fees.

22                          **THIRD CAUSE OF ACTION**

23                              **(Unjust Enrichment)**

24          38.    Plaintiffs incorporate by reference all preceding paragraphs and averments as if fully

25  set forth herein.

26          39.    Defendants have been, and continue to be, unjustly enriched, to the detriment of

27  and at the expense of the **CLASS** members, as a result of its unlawful and/or wrongful pattern

28  of conduct directed against the **CLASS** as a whole and its resulting collection of money from the

Individual and Class Action Complaint              11

1     sale of HAZARDOUS FIREPLACES.

2        40.     Defendants have unjustly benefitted through the unlawful and/or wrongful collection

3 of money from the sale of HAZARDOUS FIREPLACES, and continue to so benefit to the detriment

4 and at the expense of **CLASS** members.

5        41.     Accordingly, Defendants should not be allowed to retain the proceeds from the

6 benefits conferred upon it by the **CLASS** members, who seek disgorgement of Defendants'

7 unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and

8 seek restitution and/or rescission for the benefit of the **CLASS** members, in an equitable and

9 efficient fashion to be determined by the Court.

10        42.     The **CLASS** members are entitled to the imposition of a constructive trust upon

11 Defendants such that their enrichment, benefit and ill-gotten gains may be allocated and

12 distributed equitably by the Court to and/or for the benefit of **CLASS** members.

13                               **RELIEF REQUESTED**

14     WHEREFORE, the **CLASS** prays judgment against defendants, and each of them, as

15 hereinafter follows:

16 **ON THEIR FIRST CAUSE OF ACTION:**

17        1.     Equitable and/or injunctive relief as appropriate;

18        2.     Monetary relief including restitution (including fluid recovery if certified as a class);

19        3.     Attorneys' fees and costs of suit;

20        4.     Interest; and

21        5.     Such other and further relief as the court deems proper.

22 **ON THEIR SECOND CAUSE OF ACTION:**

23        1.     Damages including punitive damages;

24        2.     Injunctive relief;

25        3.     Penalties;

26        4.     Attorneys' fees and costs of suit;

27        5.     Interest; and

28        6.     Such other and further relief as the court deems proper.

received as a result of defendants' wrongful conduct.

DATED: February 4, 2008

CLAYEO C. ARNOLD
A Professional Law Corporation

By:_____
KIRK J. WOLDEN
Attorneys for the **CLASS**

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of each cause of action set forth in this complaint and the issues in this matter.

Dated: February 4, 2008

CLAYEO C. ARNOLD
A Professional Law Corporation

By: _____
KIRK J. WOLDEN
Attorneys for the **CLASS**

Individual and Class Action Complaint          13

# Exhibit 2

# State of California
## Secretary of State



I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of _____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



**IN WITNESS WHEREOF,** I execute this certificate and affix the Great Seal of the State of California this day of

MAR 0 6 2008

DEBRA BOWEN
Secretary of State

*Sec/State Form CE 108 (REV 1/2007)*                    OSP 06 99733

*0795492 SURV*          *A0558512* **FILED**
In the Office of the Secretary of State
of the State of California

JAN 1 1 2001 *qls*

BILL JONES, Secretary of State

# PLAN AND AGREEMENT OF MERGER

PLAN AND AGREEMENT OF MERGER dated as of December 15, 2000 (the "Agreement"), among Marco Mfg., Inc., a California corporation ("Marco" or the "Surviving Corporation"), Superior Fireplace Company, a Delaware corporation ("Superior"), Hearth Trends Inc., a Washington corporation ("Hearth Trends"), FireCraft Technologies Inc., a Delaware corporation ("FCT"), and LHP Holdings Inc., a Delaware corporation ("LHP").

## WITNESSETH:

WHEREAS, Marco is a corporation duly organized and existing under the laws of the State of California, having been incorporated on May 11, 1977; and

WHEREAS, Superior is a corporation duly organized and existing under the laws of the State of Delaware, having been incorporated on June 8, 1998 as SFC Holdings Inc.; and

WHEREAS, Hearth Trends is a corporation duly organized and existing under the laws of the State of Washington, having been incorporated on December 1, 1983 as Pyro Industries, Inc.; and

WHEREAS, FCT is a corporation duly organized and existing under the laws of the State of Delaware, having been incorporated on August 24, 1999; and

WHEREAS, each of Marco, Superior, Hearth Trends and FCT (collectively, the "Constituent Corporations") is a wholly-owned subsidiary of LHP, formerly known as Hearth Products Inc.; and

WHEREAS, the Boards of Directors of each of the Constituent Corporations deem it desirable and in the best interests of the Constituent Corporations and their sole shareholder that Superior, Hearth Trends and FCT be merged with and into Marco, upon the terms and subject to the conditions herein stated, that Marco be the Surviving Corporation and the name of Marco be simultaneously changed to be Lennox Hearth Products Inc.; and each such Board has approved this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties agree as follows:

Section 1. Terms, Surviving Corporation

1.1    Upon the effective date of the merger (as hereinafter defined), Superior, Hearth Trends and FCT shall be merged with and into Marco, with Marco as the Surviving Corporation.

1.2    Upon the effective date of the merger, the separate existence of Superior, Hearth Trends and FCT shall cease and Marco, as the Surviving Corporation, shall possess all the rights, privileges and powers and shall be subject to all the restrictions, disabilities and duties of each of the Constituent Corporations; and all the rights, privileges and powers of each of the Constituent Corporations, and all property, real, personal and mixed, and all debts due to any of the Constituent Corporations on whatever account, as well as all other things and causes of action belonging to each of the Constituent Corporations shall be vested in the Surviving Corporation; and all property, rights, privileges and powers, and all and every other interest shall be thereafter as effectually the property of the Surviving Corporation as if they were of the respective Constituent Corporations, and the title to any real property vested by deed or otherwise in either of the Constituent Corporations shall not revert or be in any way impaired by reason of the merger; but all rights of creditors and all liens upon any property of either of the Constituent Corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective Constituent Corporations shall thenceforth attach to the Surviving Corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

1.3    Upon the effective date of the merger, the outstanding shares of common stock and preferred stock, if any, of Superior, Hearth Trends and FCT shall be cancelled without consideration.

## Section 2. <u>Effective Date</u>

2.1    This Agreement and certificates or articles of merger, shall be executed and filed with the Secretary of State of the States of California, Washington and Delaware, in accordance with the applicable laws of such States, prior to December 31, 2000. The merger shall become effective on such date as this Agreement is filed with the California Secretary of State, such date herein sometimes referred to as the "effective date of the merger", as specified in this Agreement.

## Section 3. <u>Articles of Incorporation, Bylaws and Name Change</u>

3.1    Upon the effective date of the merger, Article I of the Articles of Incorporation of Marco shall be amended and restated to read in its entirety as follows: "The name of the corporation is Lennox Hearth Products Inc." As so amended, the Articles of Incorporation of Marco shall be the Articles of Incorporation of the Surviving Corporation following the effective date of the merger.

3.2    The Bylaws of Marco in effect on the effective date of the merger shall be the Bylaws of the Surviving Corporation following the effective date of the merger.

Section 4. <u>Shareholder Approval</u>

4.1    LHP, as the sole shareholder of each of the Constituent Corporations, hereby approves this Agreement.

Section 5. <u>Miscellaneous</u>

5.1    To the extent permitted by law, this Agreement may be amended or terminated by an agreement in writing, executed by each of the parties hereto, at any time prior to the effective date of the merger, with respect to any of the terms contained herein.

IN WITNESS WHEREOF, Marco, Superior, Hearth Trends and FCT have each caused this Agreement to be executed by its authorized officers, all as of the date first above written.


Carl E. Edwards, Jr.
Secretary

MARCO MFG., INC.

By: _____
Clyde Wyant
Executive Vice President-Finance


Carl E. Edwards, Jr.
Secretary

SUPERIOR FIREPLACE COMPANY.

By: _____
Clyde Wyant
Executive Vice President-Finance


Carl E. Edwards, Jr.
Secretary

HEARTH TRENDS INC.

By: _____
Clyde Wyant
Executive Vice President-Finance

3

FIRECRAFT TECHNOLOGIES INC.

Carl E. Edwards, Jr.
Secretary

By: _____
Clyde Wyant
Executive Vice President-Finance

LHP HOLDINGS INC.

Carl E. Edwards, Jr.
Secretary

By: _____
Clyde Wyant
Executive Vice President-Finance

g:\hearth\merger agmt 12-00b.doc

4

## OFFICER'S CERTIFICATE

Clyde Wyant and Carl E. Edwards, Jr., certify that:

1.      We are the Executive Vice President-Finance and Secretary, respectively, of Marco Mfg., Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of California; and, as such, are duly authorized to execute this Certificate on behalf of said Corporation.

2.      The total number of outstanding shares of each class of the Corporation entitled to vote on the merger is as follows:

| Class | Total No. of Shares Entitled to Vote |
|---|---|
| Common Shares | 1,994,099.7 |
| Preferred Shares | None |

3.      The principal terms of the Plan and Agreement of Merger in the form attached were approved by the Board of Directors and the sole shareholder of this Corporation by a favorable vote of 100% of the number of shares of each class which equaled or exceeded the vote required by each class to approve the Plan and Agreement of Merger. There are no Preferred Shares outstanding and entitled to vote.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this Certificate are true and correct of our own knowledge.

DATE:   December 15, 2000.

Clyde Wyant
Executive Vice President-Finance

Carl E. Edwards, Jr.
Secretary

g:\secty\marco\officercert.doc

## OFFICER'S CERTIFICATE

Clyde Wyant and Carl E. Edwards, Jr., certify that:

1.      We are the Executive Vice President-Finance and Secretary, respectively, of Superior Fireplace Company (the "Corporation"), a corporation organized and existing under the laws of the State of Delaware; and, as such, are duly authorized to execute this Certificate on behalf of said Corporation.

2.      The total number of outstanding shares of each class of the Corporation entitled to vote on the merger is as follows:

| Class | Total No. of Shares Entitled to Vote |
|-------|--------------------------------------|
| Common Shares | 1,000 |

3.      The principal terms of the Plan and Agreement of Merger in the form attached were approved by the Board of Directors and the sole shareholder of this Corporation by a favorable vote of 100% of the number of shares of each class which equaled or exceeded the vote required by each class to approve the Plan and Agreement of Merger.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this Certificate are true and correct of our own knowledge.

DATE:   December 15, 2000.

Clyde Wyant
Executive Vice President-Finance

Carl E. Edwards, Jr.
Secretary

g:\secty\Superior\officercert.doc

## OFFICER'S CERTIFICATE

Clyde Wyant and Carl E. Edwards, Jr., certify that:

1.    We are the Executive Vice President-Finance and Secretary, respectively, of Hearth Trends Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of Washington; and, as such, are duly authorized to execute this Certificate on behalf of said Corporation.

2.    The total number of outstanding shares of each class of the Corporation entitled to vote on the merger is as follows:

| Class | Total No. of Shares Entitled to Vote |
|-------|--------------------------------------|
| Common Shares | 316,228 |

3.    The principal terms of the Plan and Agreement of Merger in the form attached were approved by the Board of Directors and the sole shareholder of this Corporation by a favorable vote of 100% of the number of shares of each class which equaled or exceeded the vote required by each class to approve the Plan and Agreement of Merger.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this Certificate are true and correct of our own knowledge.

DATE:    December 15, 2000.

Clyde Wyant
Executive Vice President-Finance

Carl E. Edwards, Jr.
Secretary

g:\secty\HearthTrends\officercert.doc

## OFFICER'S CERTIFICATE

Clyde Wyant and Carl E. Edwards, Jr., certify that:

1.    We are the Executive Vice President-Finance and Secretary, respectively, of FireCraft Technologies Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of Delaware; and, as such, are duly authorized to execute this Certificate on behalf of said Corporation.

2.    The total number of outstanding shares of each class of the Corporation entitled to vote on the merger is as follows:

| Class | Total No. of Shares Entitled to Vote |
|-------|--------------------------------------|
| Common Shares | 1,000 |

3.    The principal terms of the Plan and Agreement of Merger in the form attached were approved by the Board of Directors and the sole shareholder of this Corporation by a favorable vote of 100% of the number of shares of each class which equaled or exceeded the vote required by each class to approve the Plan and Agreement of Merger.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this Certificate are true and correct of our own knowledge.

DATE:   December 15, 2000.

Clyde Wyant
Executive Vice President-Finance

Carl E. Edwards, Jr.
Secretary

g:\secty\FireCraft\officercert.doc



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
P. O. BOX 1468
SACRAMENTO, CA 95812-1468

# TAX CLEARANCE
# CERTIFICATE

JANUARY 11, 2000                    EXPIRATION DATE  APRIL 13, 2001
        per H.Hermanson

    LENNOX INDUSTRIES, INC
    ATTN: SUSAN BRADLEY
    2140 LAKE PARK BLVD
    RICHARDSON TX 75080

        ISSUED TO: SUPERIOR FIREPLACE COMPANY
        ENTITY ID: 2160002

This letter certifies that all taxes imposed under the Bank and
Corporation Tax Law on this corporation have been paid or are secured by
bond, deposit, or other security.

Please note the following:
* A final tax return, if not already filed, is due two months and 15 days
  after the close of the month in which dissolution or withdrawal takes
  place.  If the corporation was inactive prior to that date, attach a
  statement to the tax return giving the date it became inactive.
* Filed tax returns remain subject to audit until the expiration of the
  statute of limitations.
* If the corporation does not file the tax returns, we may issue
  additional assessments.

We sent a copy of this Tax Clearance Certificate to the Secretary of State.
Please retain this letter for your records.

PLEASE NOTE: By the expiration date above, the corporation must file all
documents required by the Secretary of State to dissolve, withdraw, or
merge.  If the corporation does not complete this process, it will remain
subject to the filing requirements of the Bank and Corporation Tax Law.

To obtain these documents, please write to:

SECRETARY OF STATE
1500 11th St., 3rd Floor
SACRAMENTO, CA 95814-5701

You can also call them at (916) 657-5448 or access their website at
www.ss.ca.gov

Franchise Tax Board
Tax Clearance Unit
Taxpayer Services Center
Telephone (800) 852-5711



# Exhibit 3



**Secretary of State**
Business Programs Division

1500 11th Street, 3rd Floor
P.O. Box 944260
Sacramento, CA 94244-2600

Certification and Records
(916) 657-5448

## RE: CORPORATION STATUS INQUIRY

Enclosed is a computer printout of corporate information in response to your recent request.

Information contained in the computer files is shown on the printout, and an explanation of the printout is on the reverse side of this page.

If the computer scrolls do not show the name for which you requested information, a printout of the scroll will be provided. An arrow near the center of the alpha scroll will identify where the name would be located if it were of record. "No record" may be noted by the name as entered on the top of the scroll page. If you require information on any of the other names on the scroll, you may request a printout for that name. The fee is $4.00 for each name requested.

A copy of a filed Statement of Information may be obtained for a fee of $1.00 for the first page of the statement and $0.50 for each additional page. If you would like the copy certified, an additional $5.00 certification fee must accompany the request.

Questions regarding the requirements to obtain relief from a Secretary of State suspension/forfeiture should be directed to the Secretary of State, Statement of Information Unit, PO Box 944230, Sacramento CA 94244-2300, (916) 657-5448.

Questions regarding the requirements to obtain relief from a Franchise Tax Board suspension/forfeiture should be directed to the Franchise Tax Board, Attention: Corporation Revivor Unit, PO Box 942857, Sacramento, CA 94257-2021, (800) 852-5711.

Information regarding related businesses of individual corporate entities is not required to be filed with this office, and subsidiaries of corporations are not identified as such in the records. Copies of bylaws and names of shareholders or owners of corporations are not required to be filed in this office, and names of persons associated with corporations are not cross referenced by the name of the individual.

Telephone numbers of corporations, social security numbers for employees of corporations, Federal identification numbers, employer identification numbers and business licenses are not of record in this office. Information concerning bankruptcies of corporations, or other businesses or individuals, is generally not available from this office. Publicly Traded Companies are required to disclose a bankruptcy on the Statement of Information.

This office does not have statutory, regulatory or investigative authority over corporate and noncorporate entities, nor is there information available in this office regarding a corporation's business practices.

Information regarding stock issuance, or the application for a permit to issue stock, is not filed in this office. You may direct requests regarding these matters to the Department of Corporations, (213) 576-7500, http://www.corp.ca.gov/, for such information as may be available from that agency.

General partnerships (that have not registered with the Secretary of State), sole proprietorships and fictitious business names are registered with county clerk/recorder offices. A listing of the Websites of the various California Counties is available from the California State Association of Counties Website at http://www.csac.counties.org.

STATUS.INQ (REV 03/2005)

| | | | |
|---|---|---|---|
| (DATE) | STATUS INQUIRY | · Page 1 | |
| NAME (1) | | | |
| CORP NO (2) (5) | INC. DATE (3a) CLASS (6) NO OF PAGES (8) | STATUS (4) CID (7) ST/CTRY(9) | |
| STMT/OFFICERS | LAST COMPLETE (10) COMP/NC (13) AMENDMENT (16) | DATE (11) DATE (14) DATE (17) CONVERSION DATE (3b) | NO (12) NO (15) NO (18) |

**STATUS CODES - EXPLANATION (Item 4)**

| | |
|---|---|
| ACTIVE: | Corporation is in good legal standing. |
| FTB SUSP: | Suspended by order of the Franchise Tax Board |
| SOS SUSP: | Suspended by the Secretary of State. |
| SOS/FTB SP: | Suspended by both the Secretary of State and the Franchise Tax Board. |
| FTB FRFT: | Forfeited by order of the Franchise Tax Board |
| SOS FRFT: | Forfeited by the Secretary of State |
| SOS/FTB FT: | Forfeited by the Secretary of State and the Franchise Tax Board. |
| FTB/SOS SP: | Suspended by the Franchise Tax Board and the Secretary of State. |
| FTB/SOS FT: | Forfeited by the Franchise Tax Board and the Secretary of State |
| DISSOLVED: | The corporation is dissolved. |
| COND DISS: | The corporation has filed a conditional dissolution. |
| MERGED OUT: | The corporation has merged out of existence. |
| CONV OUT: | The corporation has converted into a domestic other business entity. |
| INACTIVE: | The corporation has become inactive by conversion to a federal entity, term of existence expired or other reason as provided. |
| TERM EXP: | Term of existence has expired. |
| SURRENDER: | Foreign corporation has withdrawn from California. |
| CANCELLED: | Cancelled for filing fees not honored. |

PRINCIPAL EXECUTIVE ADDR
(19)    CITY/ST/CNTRY                            ZIP

CALIFORNIA ADDRESS
(20)    CITY                                     CA

MAILING ADDRESS
(21)    CITY/ST/CNTRY                            ZIP

CEO NAME
(22)    ADDRESS
        CITY                                     ZIP

AGENT NAME
(23)    ADDRESS
        CITY                                     CA

TYPE OF BUSINESS (24)

**EXPLANATION OF STATUS INQUIRY SCREEN - Refer to number on sample screen shown above left.**

(1) Name of the corporation as shown on the computer file in the records of this office.
(2) Corporation number (assigned by the Secretary of State at the time of incorporation/qualification/conversion).
(3a) Date of incorporation or qualification (Note: an "INC. DATE" date will not appear if a "CONVERSION DATE" is present..see 3b).
(3b) Date domestic stock corporation converted from a domestic or foreign other business entity, if applicable.
(4) Status of corporation (See explanation of status codes above right)
(5) Type of corporation (e.g., domestic stock, domestic nonprofit, foreign).
(6) Class code if domestic nonprofit corporation: (PB=Public Benefit) (MU=Mutual Benefit) (RE=Religious) (SL=Corporation Sole) (OC=Co-op) (AG=Agricultural Co-op) (CR=Credit Union) (UN=Unclassified).
(7) "CID" will appear if the corporation is an association that was formed to manage a common interest development.
(8) Number of pages in Articles of Incorporation or Statement and Designation by Foreign Corporation, if filed after March, 1987.
(9) Place of incorporation (State or country) of a foreign corporation.
(10) "C" denotes the last complete Statement of Information filed for the corporation.
(11) Date when the last complete Statement of Information was filed.
(12) Number assigned to the last complete Statement of Information.
(13) "C" denotes the previous "complete" Statement of Information filed; "N" denotes the last "no change" Statement of Information filed.
(14) Date that the previous "complete" or last "no change" Statement of Information was filed.
(15) Number assigned to the previous Statement of Information.
(16) "A" denotes an amendment to the last complete (or previous complete) Statement of Information filed.
(17) Date when the amendment to the last complete (or previous complete) Statement of Information was filed.
(18) Number assigned to the amended Statement of Information.
(19) Address of principal executive office, as set forth in the Statement of Information.
(20) Address in California as set forth in the Statement of Information.
(21) Last mailing address for the corporation as supplied to this office.
(22) Name and address of the chief executive officer as set forth in the Statement of Information.
(23) Name and address of the designated agent for service of process. If a foreign corporation has surrendered, the agent
      for service of process is automatically withdrawn at time of surrender.
(24) Type of business in which the corporation is engaged, as set forth in the Statement of Information.

**PLEASE NOTE:** If spaces are blank, the information is not contained in the computer file. If items 10, 11 and 12 are blank, a Statement of Information has not been filed.

**A "STATEMENT OF INFORMATION"** is a: Statement of Information - Domestic Stock Corporation (due 90 days after the date of incorporation, and annually thereafter); a Statement of Information - Foreign Corporation (due annually); and a Statement of Information - Domestic Nonprofit Corporation (due 90 days after the date of incorporation, and biennially thereafter). Statutory provisions are found in Corporations Code section 1502, 2117, 6210, 8210 and 9660.

```
03/26/08  SSCPL20              STATUS INQUIRY          PAGE 1          12:54:27.1
                                                                      CPOISTA3
NAME   SUPERIOR FIREPLACE COMPANY



CORP NO C2160002      INC. DATE 04/09/1999  STATUS MERGED OUT    01/11/2001
FOREIGN STOCK                   CLASS
                     NO OF PAGES 02         ST/CTRY DELAWARE

STMNT/OFFICERS    LAST COMPLETE C  DATE 05/02/00  NO 0129141
                      COMPL/NC     DATE           NO
                      AMENDMENT    DATE           NO


PRINCIPAL EXECUTIVE ADDR 4325 ARTESIA AVE

          CITY/ST/CNTRY FULLERTON           CALIFORNIA
                                            ZIP  92833
CALIFORNIA ADDRESS

                    CITY                     CA

MAILING ADDRESS
                    PO BOX 799900

          CITY/ST/CNTRY DALLAS              TEXAS
                                            ZIP  75379
CEO     NAME WARREN J HANSELMAN
              ADDRESS 31862 PASEO TERRAZA

          CITY/ST/CNTRY SAN JUAN CAPISTRANO  CA
                                             ZIP  92675

AGENT   NAME C T CORPORATION SYSTEM
              ADDRESS 818 WEST SEVENTH ST

              CITY LOS ANGELES             CA    90017

TYPE OF BUSINESS FIREPLACE MFR
ENTR=CONTINUE     PF2=HISTORY     PF3=BACK TO WORKSCREEN    PF10=MAIN MENU
```